NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN KACHIGIAN, <br><br> Plaintiff, <br><br> v. <br><br> BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA, <br><br> Defendants. | Civil Action No.: <br> 09-6217 (PGS) <br><br><br> MEMORANDUM & ORDER |

SHERIDAN, U.S.D.J.

This matter comes before the Court on defendant Berkshire Life Insurance Company of America's ("Berkshire") motion for summary judgment [Docket Entry No. 24]. This case is in federal court on the basis of diversity jurisdiction as Berkshire is organized under the laws of Massachusetts, Plaintiff is a New Jersey resident, and the amount in controversy exceeds $150,000. *See* 28 U.S.C. § 1332; Compl. ¶¶ 1-4. For the reasons stated below, Berkshire's motion is denied.

I

On or about June 24, 2002, Berkshire issued a disability income policy to plaintiff Steven Kachigian ("Plaintiff"). The policy provides for monthly disability benefits only in the event of total disability. The policy defines "total disability" as follows:

> Total disability means that, because of sickness or injury, you are not able to perform the material and substantial duties of your occupation. Your occupation means the regular occupation (or occupations, if more than one) in which you are engaged at the time you become disabled.
>
> You will be totally disabled even if you are at work in some other capacity so long as you are not able to work in your occupation.

Disability Policy, p. 4.

At all times relevant hereto, Plaintiff owned 50% of Cosmetic Laser Leasing, LLC ("CLL") and acted as its president and salesman. CLL is a small company owned during the applicable period by two members: Plaintiff and Dr. Jerry Gertzman, a family practitioner in Hunterdon County. The venture began after Dr. Gertzman purchased a cosmetic laser device for use in his independent laser hair removal business. Since the laser was an expensive investment and since it was only being used one day a week, Dr. Gertzman planned to lease his laser to other physicians. Thus in the spring of 2004, Dr. Gertzman and Plaintiff formed CLL, with each party contributing $3,000 in start up capital. Essentially, the business model involved Dr. Gertzman leasing his laser and providing instruction in its use while Plaintiff worked to lease the leaser to other health care providers on days that Dr. Gertzman was not using the machine.[1]

In order to solicit medical practitioners and persuade them to lease the laser, Plaintiff would visit the offices of potential clients with the laser in tow. Plaintiff alleges that it would have been impossible for him to make a deal with a client unless the client was able to see the laser in person. The laser weighs roughly 100 lbs.

In late 2005/early 2006, Plaintiff developed mild to moderate degenerative disc disease in his lower back. After several visits with doctors and some physical therapy, it was determined that Plaintiff should restrict all repetitive lifting to no more than 20 lbs. The parties agree that Plaintiff's condition is permanent and that Plaintiff is not a candidate for surgery.

On November 2, 2006, Plaintiff filed a claim for total disability pursuant to his policy. On

---

[1] Eventually CLL purchased its own laser. However, the purchase of the laser did not change either owner's responsibilities.

August 29, 2007, Berkshire rejected plaintiff's claim.

Berkshire has provided two key reasons for the rejection. First, Berkshire argues that Plaintiff is not "totally disabled," as there are many parts of Plaintiff's position as president and salesman that do not require moving the laser. In support of this argument, Berkshire notes that Plaintiff was responsible for, among other things: purchasing lists of physicians, projecting revenues, maintaining contact and communication with customers, maintaining the company's checkbook, monitoring the company's cash flow, and preparing documents for the company's accountant. Berkshire argues then that Plaintiff was never totally disabled as the restriction on repetitive lifting never affected these aspects of his profession. Finally, Berkshire points out that Plaintiff's policy only covers total disability, not partial disability.

In response, Plaintiff alleges that all of his executive functions were de minimis, and his real job was to lease the laser. Plaintiff argues that he was essentially a door-to-door salesman who approached doctors on a daily basis, generally on cold calls, in an attempt to convince them to lease the laser machine.

Second, Berkshire argues that Plaintiff did not need to bring the laser with him in order to lease the equipment. Berkshire supports this position by citing to instances where the Plaintiff was able to close deals with only marketing materials. Additionally, Berkshire notes that the person who replaced Plaintiff as owner, president, and salesman at CLL performs his job out of an office using targeting marketing as opposed to making cold calls. Finally, Berkshire claims that, if bringing the laser was so important, Plaintiff could have hired a third party to pick up the laser.[2]

---

2

Additionally, but not directly pertaining to this motion, Berkshire questions the extent of Plaintiff's injuries and suggests that Plaintiff filed his claims in order to abandon his failing

3

Plaintiff challenges all of these points. Regarding the closing of deals with only marketing materials, Plaintiff claims that no deals were ever closed where the client did not get to personally see the laser. Regarding Plaintiff's replacement at CLL, Plaintiff claims that his replacements' method of closing deals is untenable, as Plaintiff's replacement has yet to secure a single new lease. Regarding Plaintiff's ability to hire a third party to pick up the laser, Plaintiff claims that the company did not have the money to hire delivery personnel and that the machine was exceedingly fragile and expensive, requiring exceedingly responsible transport.

On July 22, 2011, Berkshire filed their motion for summary judgment. In their brief in support of summary judgment, Berkshire claims that, even if the facts are construed in Plaintiff's favor, Plaintiff is not "totally disabled" under the terms of the policy.

II

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists only if a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Such a fact is considered material only if the fact may affect the outcome of the litigation based on the substantive law. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

---

business.

After a party files a motion for summary judgment along with supporting papers, the non-moving party must produce specific facts showing that there is a genuine issue for trial. *Jersey Cent. Power & Light Co. v. Twp. of Lacey,* 772 F.2d 1103, 1109 (3d Cir.1985) (citation omitted). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990) (*citing* Fed. R. Civ. P. 56(e)).

III

The basic principles of law governing insurance policies are well-settled in New Jersey. The goal with an insurance contract, like the goal with any other contract, is to determine the intent of the parties. *See Stone v. Royal Ins. Co.*, 511 A.2d 717, 718-19 (N.J. Super. Ct. App. Div. 1986). To determine the intent of the parties, a court must look at the language of the policy. *Id.* Where the language of the policy is clear and unambiguous, a court is required to give effect to that language. *Id.*; *see also Botti v. CNA Ins. Co.*, 824 A.2d 1120, 1124 (N.J. Super. Ct. App. Div. 2003).

Here, the language of the policy is straightforward: "[t]otal disability means that [one is] not able to perform the material and substantial duties of [their] occupation." Disability Policy, p. 4. Under such a policy, "the insured is totally disabled when ever he is incapacitated from performing the duties of his particular occupation." *Kaufman v. Provident Life & Cas. Ins. Co.*, 828 F. Supp. 275, 284 (D.N.J. 1992) (quoting *Ohrel v. Conn. Cas. Co.*, 350 A.2d 310, 316 (1975)) (internal quotations omitted). To satisfy this burden, Plaintiff bears the burden of showing that is totally disabled because he is incapacitated from performing each and every substantial and material of his occupation.

The facts of this case, when viewed in a light most favorable to the non-moving party, prevent a finding of summary judgment. Plaintiff claims, essentially, that he was a traveling laser

5

device salesman. According to Plaintiff, taking the laser device on sales trips was an essential part of his job as he would have been unable to close deals without the laser device in tow. Plaintiff further claims that leasing the laser device was the bulk of his job and every other responsibility was less substantial. These assertions, which are bolstered by Plaintiff's evidence, support Plaintiff's claim that carrying the laser device was a prerequisite to "the material and substantial duties" of his occupation. *See, e.g., LeDonne v. AXA Equitable Life Ins.,* No. 05 C 1151, 2009 WL 3721038 (N.D. Ill, Nov. 2, 2009); *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121 (2d Cir. 2000). Thus, since these material facts are in dispute, Berkshire's motion for summary judgment must be denied.

## ORDER

This matter, having come before the Court on Berkshire's motion for summary judgment [Docket Entry No. 24], and this Court having considered the parties' submissions without oral argument; and for the reasons stated above,

IT IS on this 7th of March, 2012,

ORDERED that Defendants' motion for summary judgment is denied.


*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.